**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| M.O., *et al.*,<br><br>    Plaintiffs,<br><br>       v.<br><br>DAWNISHA HELLAND, in her official capacity as Acting Assistant Director, ERO Non-Detained Management Division, U.S. Immigration and Customs Enforcement, *et al.*,<br><br>    Defendants. | Civil Action No. 26-2279 |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs in this case — five noncitizen mothers enrolled in Immigration and Customs Enforcement's Alternatives to Detention (ATD) program, each of whom is seeking asylum or similar humanitarian protection — challenge an internal ICE directive known as the Helland Memorandum.  <u>See</u> ECF No. 1 (Compl.), ¶¶ 1, 18–24, 84–89.  Issued in June 2025, that Memorandum instructed officers to "escalate [the] supervision level" of ATD participants "to GPS ankle monitors whenever possible" — or, for pregnant women, wrist-worn monitors — and to "increase reporting requirements[] regardless of case type."  <u>Id.</u>, ¶¶ 87–88.  Although none had violated her conditions of release, each Plaintiff was thereafter fitted with a body-worn GPS monitor, with attendant physical, psychological, and economic harms.  <u>Id.</u>, ¶¶ 122–30.  Suing on behalf of themselves and a putative nationwide class, Plaintiffs seek vacatur of the Memorandum on the grounds that it is a legislative rule issued without notice and comment, is arbitrary and capricious, exceeds agency authority under the Immigration and Nationality Act, flouts the

agency's own regulations and policies, and violates procedural due process.  Id., ¶¶ 153–94; see also id. at 49–50.

They seek to do so under their initials, citing the sensitivity of their asylum claims and fears of retaliation and harassment should their identities be publicly linked to this suit.  See ECF No. 2 (Mot.) at 1–2.  As they have made a sufficient showing, the Court will grant their Motion for Leave to Proceed Under Pseudonyms, subject to any further consideration by the United States District Judge to whom this case is randomly assigned.  See LCvR 40.7(f) (providing that Chief Judge shall "hear and determine . . . motion[s] to file a pseudonymous complaint").

## I.    Legal Standard

Generally, a complaint must identify the plaintiffs.  See Fed. R. Civ. P. 10(a); LCvR 5.1(c)(1).  That requirement reflects the "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings."  In re Sealed Case, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting Washington Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996)).  A party moving to proceed pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences that would likely befall it if forced to proceed in its own name."  In re Sealed Case, 971 F.3d 324, 326 (D.C. Cir. 2020).  As a result, the court must "'balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure'" by applying a "flexible and fact driven" balancing test.  Id. (quoting In re Sealed Case, 931 F.3d at 96).  That test assesses "five non-exhaustive factors":

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature;

2

[2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties;

[3] the ages of the persons whose privacy interests are sought to be protected;

[4] whether the action is against a governmental or private party; and, relatedly,

[5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. at 326–27 (quoting In re Sealed Case, 931 F.3d at 97) (first alteration in original).

## II.    Analysis

Plaintiffs have met their burden to overcome the presumption in favor of disclosing their identities.  The Court addresses the factors in turn.

The first two factors, taken together, strongly support pseudonymity.  Plaintiffs do not seek to go unnamed "merely to avoid the annoyance and criticism that may attend any litigation," but to "preserve privacy in a matter of [a] sensitive and highly personal nature."  In re Sealed Case, 971 F.3d at 326 (quoting In re Sealed Case, 931 F.3d at 97) (alteration in original). Such matters can include "maintaining their and their family members' safety."  Sponsor v. Mayorkas, 2023 WL 2598685, at *2 (D.D.C. Mar. 22, 2023).  Each Plaintiff has a pending application for asylum, withholding of removal, or similar fear-based protection, see Mot. at 5–7, a context that this Court has indicated warrants particular sensitivity.  See, e.g., Coal. for Humane Immigrant Rts. v. Mullin, 2026 WL 936034, at *1 (D.D.C. Apr. 7, 2026); J.G.G. v. Trump, 2025 WL 1352316, at *2 (D.D.C. May 8, 2025); Asylumworks v. Wolf, 2020 WL 13460835, at *3 (D.D.C. Dec. 23, 2020) (confidentiality of asylum seekers is vital "precisely because the information, 'if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors'") (quoting Anim v. Mukasey, 535 F.3d 243, 253 (4th Cir. 2008)).

3

Nor do Plaintiffs' arguments rest on generalities.  See Doe v. Pub. Co. Acct. Oversight Bd., 2026 WL 1661910, at *2 (D.C. Cir. June 9, 2026) (affirming denial of pseudonymity where movant "merely asserted he would suffer a privacy injury without specifically explaining why harm was likely to result") (quotation marks and alteration omitted).  Their declarations document the human trafficking, domestic and sexual violence, and persecution that underlie their claims for protection, as well as the medical and psychological toll — dangerously high blood pressure, depression, disrupted breastfeeding, bleeding, and sleeplessness — that GPS monitoring has exacted.  See ECF Nos. 2-1 (Declaration of M.O.); 2-2 (Declaration of N.I.); 2-3 (Declaration of P.O.); 2-4 (Declaration of T.P.); 2-5 (Declaration of A.S.); see also Compl., ¶ 7; Mot. at 6–7.  Those are quintessentially private details.  Coal. for Humane Immigrant Rts., 2026 WL 936034, at *1 (claims of abuse leading to decision to seek asylum are "private details").

Identification, moreover, "poses a risk of retaliatory physical or mental harm" to Plaintiffs and, "even more critically, to innocent non-parties."  In re Sealed Case, 971 F.3d at 326 (citation omitted).  Two Plaintiffs are survivors of human trafficking who fear that their traffickers — who have reached at least one of them before — could locate and harm them were their participation in this lawsuit made public.  See P.O. Decl., ¶ 4; T.P. Decl., ¶ 6.  Others fear retribution from persecutors in their countries of origin against themselves and against family members who remain within those persecutors' reach.  See M.O. Decl., ¶ 5; N.I. Decl., ¶ 4; A.S. Decl., ¶ 4.  Public identification would also expose Plaintiffs — and their children — to the online harassment and doxing that have beset immigration litigants of late.  See Mot. at 9–10 (collecting examples); N. v. U.S. Dep't of Health & Hum. Servs., 2026 WL 571216, at *2 (D.D.C. Mar. 2, 2026) ("fear of retaliation by . . . members of the American public who are hostile to immigrants" supports anonymity).  Finally, Plaintiffs' fears of retaliation by the

officials who supervise them — whether through escalated conditions, denial of amelioration requests, or adverse action in their immigration proceedings, see Mot. at 8–9 — echo concerns that this Court found sufficiently concrete of late. See League of Women Voters v. U.S. Dep't of Homeland Sec., 2025 WL 2897654, at *2 (D.D.C. Oct. 10, 2025); Does 1–158 v. Rubio, 2025 WL 2709775, at *2 (D.D.C. Sept. 23, 2025). The first two factors accordingly tilt firmly in Plaintiffs' favor.

The third factor favors pseudonymity because this suit implicates the interests of minors. M.O.'s minor daughter is the principal applicant on a pending petition for a "T visa" — an immigration benefit for survivors of human trafficking — of which M.O. is a derivative beneficiary, such that unmasking the mother risks unmasking the child. See Compl., ¶ 18; M.O. Decl., ¶ 4. T.P.'s two young children have been approved for Special Immigrant Juvenile Status, a classification whose very existence discloses parental abuse, abandonment, or neglect. See Compl., ¶ 21. The remaining Plaintiffs are likewise mothers of minor children whose identities and immigration-related information would be revealed alongside their own. See Mot. at 10–11.

The fourth factor, which concerns the identity of the defendant, leans toward disclosure. "[A]nonymous litigation is more acceptable when the defendant is a governmental body because government defendants do not share the concerns about reputation that private individuals have when they are publicly charged with wrongdoing." J.W. v. District of Columbia, 318 F.R.D. 196, 201 (D.D.C. 2016) (cleaned up). When the government is the defendant, however, the factor turns on whether the plaintiff seeks programmatic or individual relief, for the public interest is heightened where a party "seeks to alter the operation of public law both as applied to it and, by virtue of the legal arguments presented, to other parties going forward." In re Sealed Case, 971 F.3d at 329; see Pub. Co. Acct. Oversight Bd., 2026 WL 1661910, at *3 (fourth factor

cut against accountant raising "sweeping challenges" to agency's operations "not grounded in his specific circumstances") (citation omitted).  Plaintiffs here candidly seek programmatic relief — vacatur of the Helland Memorandum on behalf of a putative nationwide class — alongside individualized reassessment of their own conditions of release.  See Compl. at 49–50; Mot. at 11.  The fourth factor accordingly weighs against them.

The fifth and final factor — the risk of unfairness to the opposing party — supports pseudonymity.  Plaintiffs have committed to disclose their identities to Defendants' counsel under seal, see Mot. at 11–12, and this factor does not lean towards disclosure where the defendant knows (or will know) the plaintiff's identity.  In re Sealed Case, 971 F.3d at 326 n.1; Coal. for Humane Immigrant Rts., 2026 WL 936034, at *3.  That Plaintiffs propose to represent a class changes nothing, as Defendants remain free to request whatever identifying information they require — including to test the adequacy of the named representatives under Rule 23.  See League of Women Voters, 2025 WL 2897654, at *3.

Tallying the ledger, the Court holds that proceeding pseudonymously is warranted for the Plaintiffs in this case.  One caveat, however.  Plaintiffs also ask that any putative class members who later participate in this litigation be permitted to proceed under initials or pseudonyms.  See Mot. at 12.  That request is premature.  Whether unnamed class members require similar protection is a question best resolved by the United States District Judge to whom this case is randomly assigned, on a fuller record and in conjunction with class certification.  The Court therefore grants the Motion as to the five named Plaintiffs only, but without prejudice to a renewed request on behalf of others.

III.    Conclusion

The Court accordingly ORDERS that:

6

1. Plaintiffs' [2] Motion for Leave to Proceed Under Pseudonyms is GRANTED IN PART as to the named Plaintiffs, subject to any further consideration by the United States District Judge to whom this case is randomly assigned;

2. All parties shall use the pseudonyms listed in the Complaint in all documents filed in this action; and

3. Within fourteen days of this Order, Plaintiffs shall file:

    i. A pseudonymous version of their [2] Motion and any attachments as a Notice to the Court on the public docket; and

    ii. A sealed declaration containing their real names and residential addresses.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  July 28, 2026