**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

M.O., *et al.*, *on behalf of themselves and others similarly situated,*

*Plaintiffs,*

–v.–

DAWNISHA HELLAND, *et al.*,

*Defendants.*

**Case No. 1:26-cv-02279**

**PLAINTIFFS' OPPOSITION TO MOTION FOR EXTENSION OF TIME**

The government continues its efforts to avoid litigating this case. After the government briefed its position on the schedule, the Court ordered a "fair and reasonable" schedule consistent with the Local Rules that "takes account of Defendants' claimed hardship." ECF No. 30 at 2, 3.

Now, just a week after that ruling—and more than two months after the complaint was served, with mere days before the record is due—the government seeks a wholesale reconsideration of the Court's order, without even acknowledging the standards for reconsideration. And the government does not ask for a small extension of a few days—it seeks *months* of additional time, transforming a schedule ending in 2026 into one that goes well into the spring of 2027. Nothing justifies this extreme and unwarranted extension. It is a transparent effort to delay resolution of this case.

Even assuming that the good cause standard under Rule 16(b) applies, the government has not come close to satisfying it. That standard requires diligence, which the government does not try to show. Just weeks ago, the government told this Court that it could prepare the record

by October 27, 2026. ECF No. 24 at 5. It now says—with no evidentiary support—that it cannot produce the record until December 18, 2026. ECF No. 34 at 4. This new position is directly contrary to the government's prior representation to this Court and reveals a disturbing lack of diligence. It instead appears that the government has taken no steps to compile the record, despite being served with the complaint at the end of July. Likewise, the government's substitution of counsel—and its decision not to use the two government attorneys previously involved in this matter—does not entitle the government to extend briefing in this case by *four months*, from ending in December 2026 to its new proposal of April 2027. That is not the diligence required by good cause.

The government also ignores the significant prejudice to Named Plaintiffs and putative class members from this proposed extension. Named Plaintiffs and putative class members have suffered serious physical pain, mental suffering, and loss of employment from their unjustified shackling. Delaying this case into April 2027 will push briefing until after A.S. gives birth—meaning this Court cannot rule on the issues before she is likely re-shackled with an infant child.

The Court should reject the government's second bite at an extension.

## ARGUMENT

### I. The Government's Motion is Another Attempt to Delay Litigating This Case

The government continues to delay resolution of this case at every turn. After being served on July 29, 2026, the government did not enter an appearance for over a month. *See* ECF No. 17. It only did so after undersigned counsel emailed the Civil Division trying to identify an attorney who would represent the government here.

Plaintiffs then sought to negotiate a briefing schedule because of the serious harms at issue (which the government has never disputed). These efforts were met with more delay. See ECF No. 22. When the government finally engaged on the schedule, it first proposed briefing

ending in January 2027. After Plaintiffs proposed a compromise, the government offered an even longer schedule as "the quickest path forward" it could offer—with briefing ending in February 2027 and record production on November 11, 2026. *Id.* at 6. That was not good-faith negotiation. And then, faced with a motion on the briefing schedule, the government claimed it could produce the record on October 27, 2026. ECF No. 24.

But after the government lost that motion, it took a new tactic—it substituted counsel. The government does not claim that prior counsel has left the government. It further appears that prior counsel remains counsel of record (and recently filed a status report) in at least one other case in this District. *See, e.g.*, *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of State*, No. 26-cv-00948-DLF, ECF No. 11 (D.D.C. Oct. 5, 2026).

But regardless, it is telling that the government did not substitute counsel with either of the two other attorneys who have been copied on correspondence in this matter. *See* Ex. A. One of those attorneys was substituted for prior counsel in another matter. *See* Substitution of Counsel, ECF No. 13, *Protect the Public's Trust v. U.S. Dep't of Educ.*, No. 25-3685 (D.D.C. Oct. 7, 2026). Rather than choose counsel familiar with this matter, the government has selected new counsel to try to force a complete do-over of the schedule even though this Court already entered a schedule. The Court should not approve of such gamesmanship.

## II. The Government Has Not Attempted To Satisfy The Standards for Reconsideration

The government fails to meet the legal requirements for its extension. Three weeks ago, the government submitted its proposal for a briefing schedule. ECF No. 24. The Court considered that schedule and issued a "middle ground" ruling that accounted for the government's claimed injuries. ECF No. 30. The government's "motion for an extension" is simply an effort to relitigate that ruling.

But the government never acknowledges the standard for reconsideration, let alone tries to meet it. *See* Fed. R. Civ. P. 54(b). Where "litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Anderson v. Duncan*, 907 F. Supp. 2d 90, 92 (D.D.C. 2012). For that reason, "[m]otions for reconsideration are disfavored." *Russell v. Dep't of Just.*, No. 1:24-CV-2986-RCL, 2024 WL 5483095, at *1 (D.D.C. Dec. 17, 2024).

Reconsideration may be appropriate when the Court "patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court." *Id.* (cleaned up); *see also Jordan v. U.S. Dep't of Lab.*, 308 F. Supp. 3d 24, 36 (D.D.C. 2018), *aff'd*, No. 18-5128, 2018 WL 5819393 (D.C. Cir. Oct. 19, 2018) ("there must be a 'good reason' underlying the parties' re-addressing an already decided issue"). None of those circumstances are present here, and the government does not suggest otherwise. For that reason alone, the Court should deny the motion.

## III. There Is No Good Cause

The government also cannot show good cause under Federal Rule of Civil Procedure 16(b) for an extension of two months to produce the record and a four-month extension of the briefing schedule.

To establish good cause, "the moving party must show both diligence and a lack of prejudice to the opposing parties." *Richardson v. Yellen*, 323 F.R.D. 444, 446 (D.D.C. 2018). The government fails on both prongs.

### A. The Government Has Not Been Diligent

"[T]he good cause standard [in Rule 16(b)] requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite [its] diligence.'" *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 226 (D.C. Cir. 2011). "If the party was not diligent, the inquiry should end." *United States v. Kellogg Brown & Root Servs., Inc.*, 285 F.R.D. 133, 136 (D.D.C. 2012).

Here, the government's "actions in this case do not bespeak diligence or any sense of urgency at all." *Capitol Sprinkler*, 630 F.3d at 226. Indeed, the government does not argue that it has been diligent. That alone requires denial of this motion.

Ignoring the diligence requirement, the government instead makes two arguments—that the agency needs more time to compile the record and that the government's voluntary decision to substitute counsel requires months of additional time to brief this case. Neither of these arguments establishes good cause.

*First*, nothing in the government's motion justifies another two months to produce a record that the government has never claimed is voluminous. The government told this Court only a few weeks ago that it could produce the record by October 27, 2026. Now it says it needs until December 18, 2026. But it has offered no reason—let alone evidence—for its abrupt change in position.

The government does not claim that its voluntary substitution of counsel impacts the production of the record – nor could it. It is "[a]gency personnel," not the government's chosen counsel, who "identify the materials directly or indirectly considered in the decision, collect them, review them for privilege and for protected personal information about noncitizens, and prepare a certified index." ECF No. 34 at 5. And the government has never attached a declaration

from any of its employees explaining when the government began its compilation of the record, the size of the record, or why the government is constantly changing the time for production of the record.

If the government had been diligent, it would have started compiling the record after it was served on July 29, 2026. Its deadline to respond or file a dispositive motion was September 28, 2026. As this Court recognized, the government intended to file a motion to dismiss—and thus should have known that the record was due on September 28, 2026. ECF No. 30 at 1 (explaining that "Defendants would have been required to produce" the record on September 28, 2026, with their motion to dismiss). Diligence required the government to take steps to compile far before October 2026.

Yet, the government's filings in this case show that it has disregarded its obligations and apparently still has not even begun to compile the record. Its most recent filing says that the government would have to compile the record in six days when it estimates the task would take 12 weeks. ECF No. 34 at 5 (asserting that the Court's schedule "leaves the agency less than one week to complete a task it estimated would take twelve"); *see also* ECF No. 24 at 4 (asserting that it could not compile the record "within *10 days* from the filing of this response in opposition," filed on September 18, 2026) (emphasis in original). But that argument is an apparent admission that the government has taken *no steps* to compile the record. The government should have *already* been compiling the record. It should not have started this process last week. Notably, the government still does not claim in its briefing that the record is voluminous or provide any reason to think that the record here will be anything more than the handful of documents it produced in the related FOIA litigation. *See Carolina Migrant Network*

*v. U.S. Immigration & Customs Enforcement*, No. 3:26-cv-00028, ECF No. 20 (Aug. 13, 2026 W.D. N.C.).

And here, the Court has already granted the government more time to produce the record than the Local Rules provide. In doing so, the Court accounted for the government's claimed hardship in producing the record. It is not the government's place to ignore that ruling in the guise of a motion to extend time.

*Second*, the government cannot wield its substitution of counsel to get a briefing schedule of its choosing. After proposing to this Court a briefing schedule that ended in February 2027 (ECF No. 24)—and after the Court ordered a briefing schedule ending in December 2026—the government now proposes a schedule ending in *April 2027*. A change in counsel cannot justify this elongated schedule—otherwise the government could repeatedly change counsel to obtain longer and longer extensions.

The government's renewed attempt to manufacture an extension disregards not only the Court's schedule, but also the Federal and Local Rules. The Federal Rules give the government 60 days to respond to a complaint, making its deadline September 28, 2026. The Local Rules provide that the first dispositive motion is to be accompanied by the administrative record, and that oppositions to motions are due 14 days after the motion, with replies due seven days after oppositions. The government's new schedule ignores all those rules. It gives itself an extension of *over 70 days* to file the first brief in this case, to January 8, 2027, which is more than five months after it was served, and more than three months after its dispositive motion was due. The government then gives itself *over 40 days* to file a consolidated opposition/reply to Plaintiffs' filings. These excessive deadlines are for the purpose of delay, nothing more.

The only reason offered by the government for its new briefing schedule is that it substituted counsel. But the government was served on July 29, 2026. Original counsel should have been reviewing the complaint and developing arguments during that time. And current counsel does not disclose to the Court that two other government attorneys (separate from the initial attorney who appeared) have been copied on correspondence in this case. Ex. A. Those attorneys have familiarity with this case and should have stepped in. The government "voluntarily chose [its] attorney[s] as [its] representative in the action, and . . . cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962) ("Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney."); *Downs v. Dir., F.B.I.*, CIV.A. No. 87-0301, 1987 WL 27211, at *1 (D.D.C. Dec. 1, 1987) (requiring assurance that "if a particular Assistant United States Attorney is unable to handle a matter pending before the Court that is already many months old, an assignment will be made to another Assistant who can attend to his duties in the matter within a reasonable time frame").

In short, as this Court has recognized, "litigants cannot be permitted to treat a scheduling order as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril." *Lurie v. Mid-Atl. Permanente Med. Grp., P.C.*, 589 F. Supp. 2d 21, 23 (D.D.C. 2008) (Lamberth, J.) (citation omitted). The government briefed these issues already, and the Court ordered a reasonable schedule that gives the government more time to file the record and its first motion than the Local Rules provide. The government's decision to change counsel is not good cause to impose months of delay in this matter.

**B. The Government's Motion Will Seriously Prejudice Plaintiffs**

The unjustified months-long extension will seriously injure Named Plaintiffs and putative class members. As Plaintiffs have previously explained, Named Plaintiffs and putative class members are suffering significant and irreparable harms. Named Plaintiffs' declarations in support of class certification describe those harms, and public reporting has detailed the serious—and tragically fatal—consequences of the government's actions here. Extending briefing by an additional four months would seriously exacerbate these significant harms.

As described in the Complaint and declarations attached to the motion for class certification, the imposition of GPS monitors has caused serious harm to the Plaintiffs and others. P.O. experiences pain from her ankle to her knee, has difficulty walking up stairs and bending her leg, and has had her blood pressure reach dangerously elevated levels attributable to the stress of wearing the monitor; she also stopped breastfeeding her one-year-old daughter as a direct result of the physical and emotional toll of the device. Compl. ¶ 127; Decl. P.O. ¶¶ 16–17, 20 (ECF No. 26-6). For T.P., a survivor of human trafficking, the ankle monitor causes her physical pain that disrupts her sleep and forces her to relive the trauma of her trafficking experience; her children have cried upon seeing the monitor, and it serves as a constant reminder of the risk of deportation and separation from her family. Compl. ¶ 129; Decl. T.P. ¶¶ 10–13 (ECF No. 26-7). N.I. has experienced pain, swelling, and scarring that at times prevented her from walking. Decl. N.I. ¶ 12 (ECF No. 26-5). The government ignores these harms, and would require the named Plaintiffs to continue suffering well into 2027. These harms are not unique to

Named Plaintiffs and extend to putative class members—including the tragic apparent suicide of a Haitian student after the government shackled him with an ankle monitor.[1]

The government does not dispute that a delay will injure Plaintiffs and class members. It claims only that its new schedule will not impact the likely re-shackling of A.S. after she gives birth. But as A.S.'s declaration explains, her due date is March 2027. Decl. A.S. ¶ 16 (ECF No. 26-8). For the Court to issue a ruling to avoid her re-shackling, the Court's briefing schedule must be honored.

Because the government has already made clear that it will not comply with the October 13, 2026 deadline for the record, Plaintiffs respectfully request that the Court order the production of the record as soon as possible, but no later than October 28, 2026, the date of Defendants' motion for summary judgment. The briefing schedule does not need to be changed to account for the government's delay.

## CONCLUSION

The Court should deny Defendants' motion.

[1] Miriam Jordan, *Haitian Student, Despondent Over Ankle Monitor, Dies in Apparent Suicide*, N.Y. Times, (Sept. 1, 2026), https://www.nytimes.com/2026/09/01/us/haiti-ankle-monitor-immigration-suicide.html (last visited Oct. 12, 2026).

Date: October 13, 2026

*/s/ Ivano Ventresca*
Ivano Ventresca (D.C. Bar No. 1045769)
Monica Sharma (D.C. Bar No. 90013922)
**ZUCKERMAN SPAEDER LLP**
2100 L Street NW, Suite 400
Washington, DC 20037
Phone: 202.778.1842
Email: iventresca@zuckerman.com
msharma@zuckerman.com

Ariella Muller (N.Y. Bar No. 5722699)**
**ZUCKERMAN SPAEDER LLP**
485 Madison Avenue, 19th Floor
New York, NY 10022
Phone: 212.704.9600
Email: amuller@zuckerman.com

*/s/ Lauren Hodges*
Lauren Hodges (A.Z. Bar No. 038791)**++
F. Evan Benz (N.C. Bar No 49077)**+
Adina Appelbaum (D.C. Bar No. 1026331)
**AMICA CENTER FOR IMMIGRANT RIGHTS**
1025 Connecticut Avenue NW, Suite 701
Washington, DC 20036
Phone: 202.331.3320
Email: lauren@amicacenter.org
evan@amicacenter.org
adina@amicacenter.org

*/s/ Sarah E. Decker*
Sarah E. Decker (Bar No. NY0566)
**ROBERT & ETHEL KENNEDY HUMAN RIGHTS CENTER**
1300 19th Street NW, Suite 750
Washington, DC 20036
Phone: 908.967.3245
Email: decker@kennedyhumanrights.org

Anthony Enriquez (Bar No. NY0626)
Sarah T. Gillman (Bar No. NY0316)
**ROBERT & ETHEL KENNEDY HUMAN RIGHTS CENTER**
88 Pine Street, 8th Floor, Suite 801
New York, New York 10005
Phone: 646.289.5593
Email: enriquez@kennedyhumanrights.org

gillman@kennedyhumanrights.org

** Admitted *pro hac vice*

+Not admitted in D.C.; working remotely from N.C. and admitted in N.C. and GA only
++ Not admitted in D.C.; admitted in AZ only