**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

M.O., *et al.*,

*Plaintiffs*,

v.

DAWNISHA HELLAND, *et al.*,

*Defendants.*

**Case No. 1:26-CV-2279-RCL**

# MEMORANDUM OPINION

Defendants have moved to extend the deadlines set in the Court's previous scheduling order. Defs.' Mot., ECF No. 34. Plaintiffs oppose. Pls.' Resp., ECF No. 36. The scheduling in this case is becoming cumbersome and disjointed. The Court therefore thinks it wise to comprehensively state its reasoning for reaching its scheduling decision to provide the parties greater clarity and nip further issues in the bud. For the reasons briefly stated herein, Defendants will be granted a brief extension. The Court has been patient, but it will not favor further extensions in this case.

## I. BACKGROUND

The scheduling for this case is getting messy. The Court provides a brief history.

### A. Background Scheduling Rules

To understand the background of this dispute, one must first familiarize themselves with the rules that form its backdrop. The Federal Rules, as supplemented by the Court's Local Civil Rules, govern APA litigation. The Federal Rules provide that the United States and its agencies have 60 days from service to answer a complaint. Fed. R. Civ. P. 12(a)(2). If the government files

a motion that the Court denies or postpones its disposition until trial, then the government has 14 days from that decision to file their responsive pleading unless the Court orders otherwise. *See* Fed. R. Civ. P 12(a)(4).

In an APA case, the Local Civil Rules provide that "the agency must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first." LCvR 7(n)(1). If the government files a motion to dismiss that does not rely on the administrative record, the government may simultaneously move to waive compliance with Local Rule 7(n)(1). *See Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018). If the court waives compliance but denies the motion to dismiss, the government must then turn over the administrative record. *See Immigr. Advocs. Response Collaborative v. United States*, No. 25-cv-2279, 2026 WL 746923, at *10 (D.D.C. Mar. 17, 2026) ("Because the Court resolved the motion to dismiss without the Administrative Record contents, it grants the Government's motion and denies Plaintiffs' request. Because this case will progress, however, the Government now must turn over the Administrative Record.").

**B. The Complaint**

Plaintiffs filed their Complaint on June 26, 2026. *See* Compl., ECF No. 1. They allege that ICE's decision to require continuous GPS monitoring for those enrolled in the Agency's Alternatives to Detention Program violates various provisions of the Administrative Procedure Act. *Id.* ¶¶ 153–194. Plaintiffs allege ongoing injuries as a result of the program. One plaintiff alleges that she has lost her job because those she interacted with "did not want to see an employee

with an ankle monitor" and risks being re-subjected to monitoring after she gives birth. *Id.* ¶ 5.[1] Another alleges lost income from having to leave work to comply with increased reporting requirements. *Id.* ¶ 7. Others allege that ankle monitors have caused serious pain, stress, and anxiety. *Id.*

The U.S. Attorney was served on July 29, 2026. *See* Return of Service, ECF No. 16. Pursuant to the Federal Rules of Civil Procedure, Defendants' answer deadline was September 28, 2026. *See* Mot. to Stay, ECF No. 29.

**C. The First Scheduling Dispute**

1. The Briefing Schedule Motion

On September 4, Plaintiffs moved to set a briefing schedule. Pls.' Mot. for Briefing Schedule, ECF No. 22 ("Pls.' Mot."). Defendants opposed. Defs.' Resp., ECF No. 24. Plaintiffs argued that their proposed briefing schedule did not shorten Defendants' deadlines and was necessary to address Plaintiffs' ongoing harms. Pls.' Mot. at 2. Under that proposal, Defendants were to produce the administrative record by September 28. *Id.* at 2.

As of September 1, Defendants estimated that they would need 12 weeks to compile the administrative record. Pls.' Mot. Ex. A at 4. Defendants opposed Plaintiffs' proposed schedule, arguing that it made demands beyond what the Federal Rules of Civil Procedure contemplate. Defs.' Resp. at 1. Specifically, Defendants pointed out that if they filed a timely answer, the administrative record would have been due on October 27. *Id.* at 2. Had they filed a motion to dismiss by the deadline and asked to waive compliance with Local Rule 7(n), they argued, then the motion could have ripened as late as October 18, meaning that Plaintiffs' schedule represented

[1] This Plaintiff has since been dismissed from the case. *See* Notice of Voluntary Dismissal, ECF No. 38.

an acceleration. *Id.* Of course, Defendants' arguments presumed that the Court did not exercise its discretion to alter those deadlines or to refuse to waive compliance. *See* Fed. R. Civ. P. 12(a)(4) ("Unless the court sets a different time . . . ."); LCvR 7(n)(1) ("[U]nless otherwise ordered by the Court . . . ."). Finally, Defendants argued that Plaintiffs' failure to file for a preliminary injunction belied any need to expedite the case. Defs.' Resp. at 3.

Defendants proposed production of the administrative record by October 27. *Id.* at 6. Oddly, that deadline only gave them 8 weeks to produce a record that they have maintained would take 12 weeks to compile. Though Defendants argued that they needed more time than Plaintiffs proposed to "compile and produce the administrative record," *id.* at 4, they made no context-specific reason indicating why the compilation would be particularly burdensome. *Cf. Gona v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-3680, 2021 WL 1226748, at *1 (D.D.C. Apr. 1, 2021) (Lamberth, J.) ("A conclusory statement of unavoidable delay does not constitute good cause to extend a deadline.").

In their Reply, Plaintiffs proposed a middle ground schedule where the administrative record would be due on October 13. Pls.' Reply, ECF No. 27 at 5.

2. Motion to Stay Deadlines

This is where things started to go off the rails. The dispute over the briefing schedule only became ripe on September 24. *See* Pls.' Reply, ECF No. 27. But the deadline for Defendants' answer was 4 days later, on September 28. On the very day that their answer was due, Defendants moved to stay the deadline. Defs.' Mot. to Stay Deadline, ECF No. 29. Defendants argued that the deadline to answer should be stayed because the parties had agreed to move directly to summary judgment. *Id.* at 2. Defendants filed no answer or responsive motion by the deadline.

Plaintiffs filed a Response to that motion on October 13. ECF No. 35. Plaintiffs opposed, reasoning that "[b]ecause Defendants seek such a large extension of time contrary to this Court's order," they would not agree to stay the deadline for a responsive pleading. *Id.* Of course, that deadline has long passed.

3. October 1 Order

On October 1, the Court adopted Plaintiffs' proposal that Defendants produce the administrative record by October 13. Order, ECF No. 30, at 3 ("October 1 Order"). The Court did not address Defendants' Motion to Stay, which was not yet ripe.

4. The Present Motion

On October 8, Defendants moved to extend their deadlines. Defs.' Mot. for Extension of Time, ECF No. 34 ("Defs.' Mot."). That was 5 days before the Court's deadline to produce the administrative record, and the motion would not ripen under the default rules until after the deadline had passed. As of now, Defendants have effectively given themselves an extension; the Court cannot compel them to produce the administrative record in the past. Plaintiffs opposed. Pls.' Resp., ECF No. 36. Defendants' opted not to file a timely reply, so the motion is now ripe for review.

## II. LEGAL STANDARDS

### A. District Court Deadlines

"District courts possess inherent authority to manage their dockets 'so as to achieve the orderly and expeditious disposition of cases.'" *United States ex rel. Dow v. HC2, Inc.*, No. 21-1197, 2026 WL 657173, at *1 (D.D.C. Mar. 9, 2026) (quoting *Link v. Wabash R. Co.*, 360 U.S.

626, 630–31 (1962)). That includes the power to set and enforce deadlines, and the Circuit "owe[s] deference to [district courts'] decisions whether and how to enforce the deadlines they impose." *In re Fannie Mae Secs. Litig.*, 552 F.3d 814, 822 (D.C. Cir. 2009) (citing *Berry v. Dist. of Columbia*, 833 F.2d 1031, 1037 n.24 (D.C. Cir. 1987)). The Circuit accordingly hesitates to overturn scheduling orders because doing so "risk[s] undermining the authority of district courts to enforce the deadlines they impose." *Id.* at 823.

**B. Deadline Extensions**

Federal Rule 6(b) provides that a court may extend a deadline "before the original time or its extension requires" for "good cause." Fed. R. Civ. P. 6(b)(1). "What constitutes good cause . . . necessarily varies with the circumstances of each case." *Watt v. All Clear Bus. Sols., LLC*, 840 F. Supp. 2d 324, 326 (D.D.C. 2012) (omission in original) (internal quotation marks omitted) (quoting 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1522.2 (3d ed. 2010)); *see also HC2*, 2026 WL 657173, at *1.

Rule 16(b) governs scheduling modifications. Fed. R. Civ. P. 16(b)(4). The standard for that rule is also "good cause." *Id.*; *see also Coleman v. Dist. of Columbia*, 284 F.R.D. 16, 21 (D.D.C. 2012) ("Under Rule 6(b) and 16(b)(4), scheduling deadlines may be extended if plaintiff shows good cause."); *Beale v. Dist. of Columbia*, 545 F. Supp. 2d 8, 14 (D.D.C. 2008) ("The same standard, good cause, applies to both rules . . . ."); LCvR 16.4(a) ("The Court may modify the scheduling order at any time upon a showing of good cause . . . ."); *Williams v. Johanns*, No. 03-2245, 2007 WL 2376668, at *3–*4 (D.D.C. Aug. 16, 2007) (applying Rule 6(b) to a briefing schedule).

"Good cause can be shown, '[i]n general, if the party seeking relief can show that the deadlines cannot reasonably be met despite the party's diligence[.]'" *Watt*, 840 F. Supp. 2d at 326 (quoting 6A Wright, Miller & Kane § 1522.2). And the Rule 16(b) analysis emphasizes diligence and prejudice when determining good cause. *See Richardson v. Yellen*, 323 F.R.D. 444, 446–47 (D.D.C. 2018).

**C. Reconsideration**

Plaintiffs argue that Defendants should have to meet the standard for reconsideration to obtain relief. Pls.' Resp. at 3–4. Federal Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The Court may revise any such decision "as justice requires." *Anderson v. Duncan*, 907 F. Supp. 2d 90, 92 (D.D.C. 2012) (internal quotation marks omitted) (quoting *DL v. Dist. of Columbia*, 274 F.R.D. 320, 324 (D.D.C. 2011)); *see also Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011).

But the Court is not persuaded that the Rule 54(b) standard governs. The text of the rule states that it applies to an order or decision "that adjudicates fewer than all the claims . . . ." Fed. R. Civ. P. 54(b). But a scheduling order does not "adjudicate" anything, it simply sets deadlines. *Cf. Baylor v. Powell*, No. 17-2647, 2019 WL 2521140, at *2 n.4 (D.D.C. May 20, 2019) (treating reconsideration and amendments to scheduling orders as different inquiries). That makes sense because Rule 54(b) motions are "limited by the law of the case doctrine," *Anderson*, 907 F. Supp. 2d at 92, and "the law-of-the-case doctrine has little to do with docket management," *Beale v. Dist. of Columbia*, 545 F. Supp. 2d 8, 16 (D.D.C. 2008).

Even assuming that the "as justice requires" standard applied, the Court would conclude that it is met in this case.

## III. ANALYSIS

Defendants argue that good cause supports an extension because the attorney who had been working on this case no longer works for the Civil Division at the U.S. Attorneys' Office. Defs.' Mot. at 4. Newly-assigned counsel, Defendants argue, could not oversee production of the administrative record within 6 days. *Id.* Defendants restate the 12-week timeline for compiling the administrative record, *id.* at 5, even though, as the Court noted above, their original proposal would have given them 8 weeks to do so, Defs.' Resp. at 3. And again, Defendants make no representations that the record is voluminous or challenging to compile. *See* Defs.' Mot. at 5. That issue didn't simply slip their minds, they just chose to equivocate, stating that as of September 1, "the agency could not reliably anticipate how voluminous the record would be." Defs.' Mot. at 5.

Defendants propose producing the administrative record by December 18, *id.*, nearly eight weeks after their original proposal and roughly 21 weeks after being served with the Complaint. Plaintiffs oppose, pointing to Defendants' original October 27 proposal, Pls.' Resp. at 5, and arguing that the government has not demonstrated diligence in beginning to compile the record, *id.* at 5–6. Plaintiffs also note that Defendants' statement that they would have "less than one week to complete a task it estimated would take twelve," Defs.' Mot. at 5, indicates that Defendants had taken no steps to begin compiling the record at all. Pls.' Resp. at 6. Finally, Plaintiffs argue that Defendants may not use substitution of counsel to gain an extension "otherwise the government could repeatedly change counsel to obtain longer and longer extensions." *Id.* at 7. And, they note, "[o]riginal counsel should have been reviewing the complaint and developing arguments" since they were served. *Id.* at 8.

The Court is somewhat in the dark. Plaintiffs are correct that Defendants have provided no specific information that explains their 12-week estimate for the compilation of the administrative record. Nor have they provided any explanation why, despite claiming that production would take 12 weeks, they proposed to produce it in 8. Nor have they provided information that would give the Court insight into where they currently are in the process. Nor have they responded to Plaintiffs' assertion that the case "concerns a single email sent by Acting Assistant Director Dawnisha Helland mandating the shackling of noncitizens." Pls.' Mot. at 6. Though the Court wishes to give weight to the burdens that the government may face in compiling the administrative record, at no point have Defendants provided sufficient information to determine what specific burdens they are experiencing in this case. Accordingly, the Court determines that Defendants have not shown good cause for the extension they request.

Still, Defendants have represented that "the agency's work to compile and certify the administrative record is ongoing" meaning that more time will allow that "work to be completed so that the record is complete when it is produced." Defs.' Mot. at 2. And the Court recognizes that Defendants are entitled to a presumption of regularity in performing their duty to compile the administrative record. *See League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 177 (D.D.C. 2025) (citing *Est. of Parsons v. Palestinian Auth.*, 651 F.3d 118, 130 (D.C. Cir. 2011) (Henderson, J., concurring in part)).

The Court is also mindful that Defendants' counsel is new to the case and that thorough, high-quality briefing will ultimately assist the Court in reaching a speedy resolution to this matter. A speedy resolution is precisely what Plaintiffs are seeking. For that reason, the Court determines that a brief extension will not prejudice Plaintiffs. The schedule the Court will adopt balances their interests and ensures that the case will be ready to be resolved by the beginning of 2027.

Accordingly, the Court determines that good cause supports a brief extension.

## IV. CONCLUSION

Defendants will be ordered to produce the administrative record by October 30, 2026. That is a generous extension even from their previous proposal and therefore beyond the latest point at which the administrative record would be produced under the Local Rules, in other words, 30 days after the Answer.

The remaining deadlines will be adjusted accordingly. Defendants will file their motion for summary judgment by November 20, 2026. Plaintiffs will file their motion for summary judgment and opposition to Defendants' motion for summary judgment by December 4, 2026. Defendants will file their opposition to class certification by December 4, 2026. Defendants will file their opposition to Plaintiffs' motion for summary judgment and reply to Plaintiffs' opposition by December 18, 2026. Plaintiffs may file any reply to Defendants' opposition to summary judgment and class certification by January 4, 2026.

Plaintiffs' Motion to Expedite will be denied as moot because this underlying motion has now been resolved.

Defendants' motion to stay the deadline for their answer will be granted. Plaintiffs' Response provides no reason why an Answer will advance the litigation, and the Court determines that it is in all parties' best interest that the government devote its time to its summary judgment motion, thus ensuring comprehensive briefing that will allow swift and effective resolution of this case. And, though the circumstances are frustrating, the Court does not think it particularly useful at this juncture to enforce a deadline that has long passed.

The Court has attempted to provide a fair schedule for the course of this litigation. But the Court's patience is not unlimited. Further extensions will not be viewed favorably.

An Order accompanying this Memorandum Opinion shall issue.

Date: 27 October, 2026

Hon. Royce C. Lamberth
United States District Judge