UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| M.O., *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>DAWNISHA HELLAND, *et al.*,<br><br>Defendant. | Civil Action No. 22-2279 (RCL) |

**MOTION FOR SUMMARY JUDGMENT AND**
**MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Federal Rule of Civil Procedure 56, and Local Rule 7(h), and the Court's Order of October 27, 2026, Defendants respectfully move for summary judgment on all claims in the Class Action Complaint, ECF No.1

The grounds for this motion are set forth in the accompanying memorandum of points and authorities. The certified list of the contents of the administrative record was filed on October 30, 2026, ECF No. 41, in accordance with Local Civil Rule 7(n)(1). A proposed order is attached.

## TABLE OF CONTENTS


Table of Contents ........ i

Table of Authorities ........ iii

Introduction ........ 1

Statement of Facts ........ 2

I. Statutory and Regulatory Framework ........ 2

A. Detention and Release Pending Removal Proceedings ........ 2

B. Supervision after a final order of removal ........ 2

C. Parole ........ 3

II. The Alternatives to Detention Program ........ 3

III. The June 9, 2025 Broadcast ........ 3

IV. Plaintiff and This Suit ........ 4

Legal Standards ........ 5

Argument ........ 6

I. Plaintiff's Claims Fail at the Threshold ........ 6

A. Plaintiff lack standing for the relief they seek ........ 6

B. The INA withdraws jurisdiction over Plaintiff's challenge to discretionary release conditions ........ 7

C. The June 9 broadcast is not final agency action ........ 8

II. Each of Plaintiffs' Claims Fail on the Merits ........ 9

A. Count 1: The broadcast was not required to go through a notice and comment ........ 9

B. Count 3: The broadcast is consistent with the INA ........ 10

C. Count 4: Accardi does not apply to non-binding internal guidance ........ 11

D. Count 2: The broadcast is not arbitrary and capricious ........ 12

E. Count 5: The broadcast does not violate procedural due process on its face ....................14

III. Any Relief Must Be Narrowly Tailored....................15

Conclusion....................16

# TABLE OF AUTHORITIES

Cases

*Allied-Signal, Inc. v. NRC*,
988 F.2d 146 (D.C. Cir. 1993) .......... 14
*Am. Bioscience, Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2001) .......... 5
*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 8
*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
419 U.S. 281 (1974) .......... 12, 13
*Camp v. Pitts*,
411 U.S. 138 (1973) .......... 6, 13
*Davis v. FEC*,
554 U.S. 724 (2008) .......... 7
*Demore v. Kim*,
538 U.S. 510 (2003) .......... 8, 14
*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) .......... 13
*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) .......... 13
*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) .......... 12
*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021) .......... 6
*Fla. Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) .......... 6
*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) .......... 14
*Heckler v. Campbell*,
461 U.S. 458 (1983) .......... 11
*Heckler v. Chaney*,
470 U.S. 821 (1985) .......... 8
*INS v. National Center for Immigrants' Rights, Inc.*,
502 U.S. 183 (1991) .......... 10, 11
*Jennings v. Rodriguez*,
583 U.S. 281 (2018) .......... 8
*Kucana v. Holder*,
558 U.S. 233 (2010) .......... 7
*Lincoln v. Vigil*,
508 U.S. 182 (1993) .......... 8, 9
*Lopez v. Davis*,
531 U.S. 230 (2001) .......... 11
*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 5, 6

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) .......... 9
*Mathews v. Eldridge*,
424 U.S. 319 (1976) .......... 14
*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 12
*Nat'l Mining Ass'n v. McCarthy*,
758 F.3d 243 (D.C. Cir. 2014) .......... 9
*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .......... 9
*Pac. Gas & Elec. Co. v. FPC*,
506 F.2d 33 (D.C. Cir. 1974) .......... 9
*Padula v. Webster*,
822 F.2d 97 (D.C. Cir. 1987) .......... 11
*Perez v. Mortg. Bankers Ass'n*,
575 U.S. 92 (2015) .......... 9
*Rempfer v. Sharfstein*,
583 F.3d 860 (D.C. Cir. 2009) .......... 5
*Reno v. Flores*,
507 U.S. 292 (1993) .......... 11, 13
*Schweiker v. Hansen*,
450 U.S. 785 (1981) .......... 11
*Sierra Club v. Mainella*,
459 F. Supp. 2d 76 (D.D.C. 2006) .......... 5
*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 5, 6
*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 7, 15
*United States v. Salerno*,
481 U.S. 739 (1987) .......... 13
*Vietnam Veterans of Am. v. Sec'y of the Navy*,
843 F.2d 528 (D.C. Cir. 1988) .......... 11
*Zadvydas v. Davis*,
533 U.S. 678 (2001) .......... 10, 14

Statutes

5 U.S.C. § 553(b)(A) .......... 9
5 U.S.C. § 701(a)(2) .......... 8
5 U.S.C. § 704 .......... 8
5 U.S.C. § 706(2)(A) .......... 6
8 U.S.C. § 1182(d)(5)(A) .......... 3, 7
8 U.S.C. § 1226(a) .......... 2
8 U.S.C. § 1226(e) .......... 7
8 U.S.C. § 1231(a)(3) .......... 2, 13
8 U.S.C. § 1252(f)(1) .......... 14
8 U.S.C. §§ 1221–1232 .......... 14

Rules

Federal Rule of Civil Procedure 56 .......... 1

Regulations

8 C.F.R. § 212.5(c) .......... 3
8 C.F.R. § 241.4(j)(1) .......... 2
8 C.F.R. §§ 236.1(c)(8) .......... 2
8 C.F.R. §§ 236.1(d) .......... 8, 11, 14

Other Authorities

*Id.* ¶ 116 .......... 9

## INTRODUCTION

Congress gave the Executive Branch broad authority to decide whether noncitizens in removal proceedings, or who have already been ordered removed, are detained or released, and on what conditions. Each Plaintiff is a noncitizen whom U.S. Immigration and Customs Enforcement ("ICE") chose to release rather than detain, subject to supervision under its Alternatives to Detention ("ATD") program. Plaintiffs do not dispute that ICE may supervise them. They object to the form the supervision now takes.

On June 9, 2025, the Acting Assistant Director of ICE's Non-Detained Management Division sent an internal broadcast to field personnel directing them, among other things, to escalate ATD participants to GPS monitoring "whenever possible." Plaintiffs recast that internal guidance as a "GPS Monitoring Rule" and ask the Court to vacate it nationwide under the Administrative Procedure Act ("APA").

The claims fail at the threshold. Plaintiffs' injuries flow from the conditions of their own release, which would remain in place if the broadcast were set aside, and the broadcast expired by its own terms before Plaintiffs filed suit. The Immigration and Nationality Act ("INA") withdraws jurisdiction to review the Executive's discretionary judgments about noncitizens' release and the conditions of that release, and bars the class wide coercive relief Plaintiffs seek. The broadcast is guidance to officers about how to exercise existing discretion; it is not final agency action that itself fixes anyone's legal rights.

The claims also fail on the merits. Guidance to agency staff that leaves room for case-specific judgment is a general statement of policy exempt from notice and comment. Nothing in the INA or its regulations forbids ICE from adopting a default level of supervision. Non-binding handbooks, web pages, and prior memoranda do not bind the agency under *Accardi* and cannot prevent it from changing course. The broadcast acknowledged that it was changing reporting

requirements and was issued through the agency's ordinary channels for operational guidance. Moreover, Plaintiffs' facial due process theory cannot succeed where existing procedures allow a noncitizen to seek changes to release conditions and where the putative class sweeps in people with widely differing legal status. Therefore, the Court should enter judgment for Defendants.

## STATEMENT OF FACTS

### I. Statutory and Regulatory Framework

#### A. Detention and Release Pending Removal Proceedings

The INA provides that a noncitizen "may be arrested and detained pending a decision on whether" he or she is to be removed. 8 U.S.C. § 1226(a). Except where detention is mandatory, the Secretary "may release" the noncitizen on bond "containing conditions prescribed by" the Secretary, or on conditional parole. *Id.* § 1226(a)(2). Release is a matter of discretion; the statute sets no ceiling on the conditions that may accompany it. By regulation, an officer may release a noncitizen who demonstrates that release would not pose a danger and that he or she is likely to appear. 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). A released noncitizen may ask an immigration judge to ameliorate the conditions of release within seven days, and thereafter may seek review by the district director, with an appeal to the Board of Immigration Appeals. *Id.* §§ 236.1(d), 1236.1(d).

#### B. Supervision after a final order of removal

A noncitizen who is ordered removed but not removed within the removal period "shall be subject to supervision under regulations prescribed by" the Secretary. 8 U.S.C. § 1231(a)(3). The statute lists required terms of supervision, including periodic appearances and obedience to reasonable written restrictions on the noncitizen's conduct or activities. *Id.* The implementing regulations direct ICE to impose "such conditions or special conditions on release as the Service considers appropriate in an individual case or cases," 8 C.F.R. § 241.4(j)(1), and set out a non-exhaustive list of conditions, *id.* § 241.5(a).

### C. Parole

The Secretary may "in his discretion" parole an applicant for admission into the United States temporarily "under such conditions as he may prescribe." 8 U.S.C. § 1182(d)(5)(A); *see* 8 C.F.R. § 212.5(c), (d).

## II. The Alternatives to Detention Program

ICE's Alternatives to Detention program supervises noncitizens whom ICE has released from, or elected not to place in, detention. Its largest component, the Intensive Supervision Appearance Program ("ISAP"), uses several supervision technologies: a smartphone application (SmartLINK), telephonic reporting, and GPS devices worn on the ankle or wrist. Compl. ¶¶ 44, 49–57. The mix of technologies and reporting requirements assigned to participants has varied over the program's history under guidance issued to field personnel. *See id.* ¶¶ 68–75.

## III. The June 9, 2025 Broadcast

On the morning of June 9, 2025, the ATD Unit Chief circulated a draft broadcast notifying the field of increased in-person contractor reporting for post-order cases. AR 4–5. After an Assistant Directors' meeting that morning, the Non-Detained Management Division revised the draft to add guidance on monitoring technology. AR 4. The broadcast was approved and, at 4:42 p.m., issued to all Enforcement and Removal Operations (ERO) personnel under the name of the Acting Assistant Director for Non-Detained Management, with the concurrence of the Assistant Director for Field Operations. AR 1, 3.

The broadcast is titled "Increase of In-Person Check-Ins at Contractor Offices for ATD Participants" and announces "changes to reporting requirements for aliens assigned to the ATD program." AR 1. It provides that: (1) post-order participants assigned to virtual check-ins "will now move to in-person check-ins"; (2) "[i]f the alien is not being arrested at the time of reporting," officers should "escalate their supervision level to GPS ankle monitors whenever possible and

increase reporting requirements, regardless of case type”; (3) officers should not release noncitizens on an order of release on recognizance or order of supervision “without technology”; (4) “[a]ll pregnant females should be placed on wrist-worn technology”; and (5) contractor offices can provide field offices with reports of upcoming check-ins. *Id.* The broadcast is marked For Official Use Only and not for release to the public. AR 2. By its terms, it “expires one year from the date it was sent, pursuant to ERO Policy.” AR 1.

The record also contains two earlier policy documents. A September 14, 2009 memorandum discontinued the use of radio-frequency and GPS ankle bracelets on persons whose medical conditions make those devices inappropriate, including verifiably pregnant women, and directed that such persons be transferred to another form of monitoring. AR 6. ICE Directive 11032.4 (July 1, 2021) addresses pregnant, postpartum, or nursing individuals. AR 7–15. It provides that such individuals enrolled in ATD are not to be required to wear a radio-frequency or GPS monitor. AR 12–13 (§§ 4.5(7), 5.1). It also states that it “provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice,” and that it creates no right enforceable by any party. AR 15 (§ 9).

Plaintiffs allege that on October 28, 2025, the Acting Executive Associate Director issued a further memorandum titled “Reporting Requirements for Aliens Released from ICE Custody,” which provides, among other things, that supervisory officers “must review and recommend changes to reporting and ATD requirements based on individual case circumstances.” Compl. ¶¶ 92, 95. Plaintiffs do not challenge that memorandum.

## IV. <u>**Plaintiff and This Suit**</u>

Five noncitizens enrolled in ATD filed this lawsuit. One, M.O., has since voluntarily dismissed her claims. ECF No. 38. Of the four who remain, two have pending asylum applications in removal proceedings (N.I. and A.S.); one was paroled into the United States in October 2024

(P.O.); and one has a prior removal order and is in withholding-only proceedings (T.P.). Compl. ¶¶ 19–24. Each alleges that she was placed on a GPS ankle monitor between September 2025 and April 2026. *Id.* None alleges that she is pregnant or has been placed on a wrist-worn device.

Plaintiffs filed this putative class action on June 26, 2026. They assert five APA counts: (1) failure to use notice-and-comment rulemaking; (2) arbitrary and capricious action; (3) action contrary to the INA; (4) violation of the *Accardi* doctrine; and (5) violation of procedural due process. Compl. ¶¶ 153–194. They ask the Court to certify a class, vacate the June 9 broadcast and the "GPS Monitoring Rule," and order individualized reassessments. *Id.* at 49–50. Plaintiffs did not seek preliminary relief. They moved for class certification on September 24, 2026, ECF No. 26, and that motion is pending. On October 27, 2026, the Court set a schedule for summary judgment briefing and stayed Defendants' deadline to answer. Mem. Op., ECF No. 40, at 10. Defendants served the administrative record and filed the certified index of its contents on October 30, 2026. ECF No. 41.

**LEGAL STANDARDS**

Plaintiffs bear the burden of establishing subject-matter jurisdiction, including standing for each claim and each form of relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

When a court reviews agency action under the APA, the Rule 56 standard does not apply in its ordinary form. The district court "sits as an appellate tribunal," and the "entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Summary judgment is the mechanism for deciding whether the agency action is supported by the administrative record and consistent with the APA standard of review. *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006); *see Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir.

2009). Review is confined to the record that was before the agency. *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

A court may set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). That standard is deferential: the court asks only whether the agency acted within a zone of reasonableness and reasonably explained its decision. *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

## ARGUMENT

## I. <u>Plaintiff's Claims Fail at the Threshold</u>

### A. Plaintiff lack standing for the relief they seek

Standing must be shown claim by claim and remedy by remedy. *TransUnion*, 594 U.S. at 431. Plaintiffs fall short in three respects.

First, no remaining Plaintiff has standing to challenge the broadcast as it applies to pregnant participants. The only Plaintiff who alleged that she was pregnant and placed on a wrist-worn device, M.O., has voluntarily dismissed her claims. ECF No. 38. None of the four remaining Plaintiffs alleges that she is pregnant or wears a wrist device. Compl. ¶¶ 19–24. They therefore cannot press claims that rest on the broadcast's direction regarding pregnant participants.

Second, Plaintiffs cannot show redressability. Their injuries flow from the conditions attached to their own release. Those conditions rest on ICE's independent statutory and regulatory authority, which would remain if the June 9 broadcast were set aside. An order vacating the broadcast would not remove any of the Plaintiffs' monitors; each would remain subject to supervision at a level ICE determines. *See Lujan*, 504 U.S. at 561–62. That is especially clear for Count 1: a ruling that the guidance should have gone through notice and comment would not redress the physical harms Plaintiffs attribute to the devices.

The broadcast's own terms confirm the point. It "expires one year from the date it was sent." AR 1. It was sent on June 9, 2025, so by its terms it expired on June 9, 2026, more than two weeks before Plaintiffs filed this suit on June 26, 2026. Standing is assessed as of the time the complaint is filed. *Davis v. FEC*, 554 U.S. 724, 734 (2008). An order vacating guidance that had already lapsed would redress nothing.

Third, no class has been certified. Unless and until one is, any relief must be limited to the named Plaintiffs. *See Trump v. CASA, Inc.*, 606 U.S. 831 (2025).

### B. The INA withdraws jurisdiction over Plaintiff's challenge to discretionary release conditions

Congress shielded the Executive's discretionary custody judgments from judicial review. Section 1226(e) provides that the Secretary's "discretionary judgment regarding the application of this section shall not be subject to review," and that no court may set aside any action or decision under the section regarding detention or release or the grant, revocation, or denial of bond or parole. 8 U.S.C. § 1226(e). Section 1252(a)(2)(B)(ii) separately bars review of any decision or action the authority for which is specified by statute to be in the Secretary's discretion. The parole power is expressly so specified. *Id.* § 1182(d)(5)(A); *see Kucana v. Holder*, 558 U.S. 233, 247–48 (2010).

The choice of what conditions to attach to a discretionary release is the core of the judgment these provisions protect. Although Plaintiffs style their suit as a challenge to a "rule," what they ask the Court to review, and to order redone, is the level of supervision ICE selected for each of them. Compl. at 50 (Prayer for Relief ¶¶ 6–7). That is a challenge to the "discretionary judgment regarding the application of" § 1226. Defendants recognize that § 1226(e) does not bar challenges to the statutory framework itself or to the extent of the government's detention authority. *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003). But

Plaintiffs do not contend that ICE lacks authority to require GPS monitoring of any ATD participant. Their theory is that ICE exercised its discretion in the wrong way.

For the same reason, the manner in which ICE sets supervision levels is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The INA supplies no meaningful standard against which to judge the choice among lawful conditions of release. *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *Lincoln v. Vigil*, 508 U.S. 182, 191–93 (1993).

**C. The June 9 broadcast is not final agency action**

The APA authorizes review only of "final agency action." 5 U.S.C. § 704. Action is final when it marks the consummation of the agency's decisionmaking process and is one by which rights or obligations have been determined or from which legal consequences flow. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

The June 9 broadcast does not meet the second condition. It is, in the certifying official's words, an "internal broadcast" from a division head to field personnel about how to carry out existing authority. ECF No. 41-1 ¶ 2; AR 1–2. It was marked For Official Use Only, was not published, and is not addressed to regulated parties. AR 2. It directs escalation "whenever possible," language that leaves room for officers to decide when escalation is not possible or appropriate. AR 1. It creates no new legal authority and imposes no obligation on any noncitizen by its own force. A noncitizen's obligations arise only when an officer sets conditions in that person's case, a decision the regulations make reviewable through a separate process. 8 C.F.R. §§ 236.1(d), 1236.1(d). Plaintiffs themselves allege that later guidance requires supervisory review of reporting and ATD requirements "based on individual case circumstances." Compl. ¶ 95. And their own figures show that the broadcast did not operate as an inflexible command: by their count, more than 131,000 participants remained on SmartLINK ten months later. *Id.* ¶ 116. Guidance that tells staff how to approach future case-by-case decisions, without binding effect on the public, is

not final agency action. *See Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251–53 (D.C. Cir. 2014).

Nor can Plaintiffs obtain review by labeling the sum of ICE's supervision decisions a "GPS Monitoring Rule." The APA does not permit a programmatic challenge to the way an agency administers a program; rather a plaintiff must identify a discrete agency action that harms him. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

## II. Each of Plaintiffs' Claims Fail on the Merits

### A. Count 1: The broadcast was not required to go through a notice and comment

The APA's notice-and-comment requirement does not apply to "general statements of policy" or to "rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). A legislative rule has the force and effect of law; a policy statement advises the public or agency staff of how the agency proposes to exercise a discretionary power. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96–97 (2015); *Lincoln*, 508 U.S. at 197. The D.C. Circuit asks whether the document imposes legally binding obligations on regulated parties and whether it leaves the agency and its decisionmakers free to exercise discretion. *Nat'l Mining Ass'n*, 758 F.3d at 251–53; *Pac. Gas & Elec. Co. v. FPC*, 506 F.2d 33, 38 (D.C. Cir. 1974).

The June 9 broadcast is a policy statement. It imposes no obligation on any noncitizen and could not be the legal basis for any sanction; a noncitizen's conditions come from an order issued in his own case under the statute and regulations. It tells officers how to exercise discretion they already hold, and its operative instruction, to escalate "whenever possible," is not the language of an inflexible command. AR 1. Plaintiffs' own figures bear that out: most ATD participants remained on SmartLINK long after the broadcast. Compl. ¶ 116. ICE's supervision guidance has

always taken this form: the prior policies on which Plaintiffs rely were themselves issued as emails, memoranda, handbooks, and presentations, without notice and comment. *Id.* ¶¶ 68–75. Plaintiffs cannot maintain both that those documents validly governed and that their successor was procedurally defective.

Plaintiffs' reliance on unenacted bills, Compl. ¶¶ 46, 157, is misplaced. Failed legislation is a weak guide to the meaning of existing law, and the cited bills would have required ATD enrollment and GPS monitoring for every noncitizen on the non-detained docket, a far broader mandate than internal guidance about current ATD participants. *See id.* ¶¶ 46–47.

**B. Count 3: The broadcast is consistent with the INA**

Nothing in the INA limits the conditions ICE may attach to release or prescribes how ICE must choose among them. Section 1226(a)(2) authorizes release on bond "containing conditions prescribed by" the Secretary or on conditional parole. Section 1231(a)(3) requires supervision and contemplates reasonable written restrictions on conduct and activities. Section 1182(d)(5)(A) authorizes parole "under such conditions as [the Secretary] may prescribe." The Supreme Court has recognized the government's authority to subject released noncitizens to supervision with conditions. *Zadvydas v. Davis*, 533 U.S. 678, 695–96 (2001).

Plaintiffs' contrary argument rests on *INS v. National Center for Immigrants' Rights, Inc.*, 502 U.S. 183 (1991). Compl. ¶ 170. That decision cuts against them. The Court there reversed a ruling that had invalidated a regulation generally requiring release bonds to contain a condition barring unauthorized employment, and it upheld the regulation on its face as consistent with the Attorney General's statutory authority. 502 U.S. at 194–96. A generally applicable condition was permissible because the surrounding administrative procedures, including the right to seek prompt review of bond conditions, supplied the individualized determinations the statute contemplates. *Id.* The same is true here: a noncitizen may seek amelioration of the conditions of release from an

immigration judge or the district director. 8 C.F.R. §§ 236.1(d), 1236.1(d). And it is settled that an agency charged with individualized determinations may adopt general rules or presumptions to guide them. *Lopez v. Davis*, 531 U.S. 230, 243–44 (2001); *Heckler v. Campbell*, 461 U.S. 458, 467 (1983); *Reno v. Flores*, 507 U.S. 292, 313–14 (1993). A default level of supervision that applies "whenever possible" is such a presumption.

The regulations are no different. Sections 236.1(c)(8) and 1236.1(c)(8) describe when an officer may release; they say nothing about which conditions may be chosen. Section 241.4(j)(1) authorizes conditions the agency considers appropriate "in an individual case or cases," and the list in § 241.5(a) is expressly non-exhaustive. *See* Compl. ¶¶ 35–36. Plaintiffs concede that GPS monitoring has been a feature of ATD under those same regulations. *Id.* ¶ 44.

**C. Count 4: Accardi does not apply to non-binding internal guidance**

The *Accardi* doctrine requires an agency to follow its own binding regulations. It does not convert every handbook, web page, slide presentation, or internal email into enforceable law. *See United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954); *Schweiker v. Hansen*, 450 U.S. 785, 789–90 (1981) (per curiam); *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 536–38 (D.C. Cir. 1988); *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987). The materials Plaintiffs invoke, including the 2017 ISAP Handbook, a 2021 email, an archived FAQ page, and a letter to a Member of Congress, are informal guidance of exactly that kind. Compl. ¶¶ 65–83, 177.

More fundamentally, *Accardi* addresses an agency's failure to follow rules that remain in force. It does not bar an agency from changing non-legislative guidance. If the June 9 broadcast departs from earlier guidance, it supersedes that guidance to the extent of the conflict; it does not violate it. The regulations Plaintiffs cite are not violated for the reasons given in Part II.B.

ICE Directive 11032.4 forecloses Plaintiffs' reliance on it by its own terms. The Directive "provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice," and it disclaims any intent to create a right or benefit enforceable by any party. AR 15 (§ 9). Whether an agency pronouncement binds the agency turns on whether the agency intended to be bound, as shown by the document's language and context. *See Wilderness Soc'y v. Norton, 434 F.3d 584, 595-96* (D.C. Cir. 2006) (internal management policies that were framed as guidance for agency staff did not bind the agency); Vietnam Veterans of Am. v. Sec'y of the Navy, 843 F.2d 528, 536-38 (D.C. Cir. 1988). A directive that describes itself as internal guidance and disclaims any enforceable right reflects no intent to be binding. *Damus v. Nielsen*, 313 F. Supp. 3d 317 (D.D.C. 2018), is not to the contrary. While the *Damus* court applied the *Accardi* doctrine despite a similar disclaimer, it did so because the government conceded the directive was binding and, more importantly, because that directive established 'minimum procedural safeguards' for a 'party otherwise left unprotected.' *Id.* at 337–38. No such concession exists here. Furthermore, unlike the mandatory interview and written-explanation requirements in *Damus*, the broadcast here concerns internal agency guidance on monitoring technology. Because this reflects an internal agency choice rather than the creation of individual procedural rights, the Section 9 disclaimer and reservation of rights should be given full effect. And no remaining Plaintiff has standing to challenge the broadcast's treatment of pregnant participants. *Supra* Part I.A.

**D. Count 2: The broadcast is not arbitrary and capricious**

Arbitrary-and-capricious review is narrow, and a court may not substitute its judgment for the agency's. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency that changes policy need not show that the new policy is better than the old one. It must

display awareness that it is changing position and show that there are good reasons for the new policy. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

The June 9 broadcast is brief operational guidance, and its record is correspondingly short. AR 1–15. The APA does not demand a detailed statement of reasons for internal guidance exempt from § 553, and a court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). The record reflects that the broadcast began as a notice to the field of increased in-person reporting for post-order cases, AR 4–5; that the guidance on monitoring technology originated with ERO leadership at the morning's Assistant Directors' meeting and was incorporated into the broadcast the same day, AR 4; and that the broadcast was approved and issued with the concurrence of the Assistant Director for Field Operations, AR 1, 3. The broadcast states on its face that it changes reporting requirements, so the agency displayed awareness that it was changing course. AR 1. By its terms, the escalation instruction applies where "the alien is not being arrested at the time of reporting," *id.*; that is, it addresses the level of supervision for participants who report in person and remain at liberty. The instruction is qualified by "wherever possible," the broadcast makes separate provision for pregnant participants, and it is limited to one year. *Id.* The record also includes the agency's existing guidance on pregnant, postpartum, and nursing individuals. AR 6, 7–15.

Plaintiffs' asserted reliance interests do not alter the analysis. Supervision levels in ATD have never been fixed; Plaintiffs' own allegations show that ICE adjusted them up and down over time, and no statute, regulation, or order promised any participant a particular technology. Compl. ¶¶ 76–81. An expectation that discretionary, revisable conditions will not change is not the kind

of serious reliance interest that requires separate discussion. *Cf. DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30–33 (2020).

Plaintiffs' extra-record materials, including studies, earnings-call transcripts, and news reports about a government contractor, Compl. ¶¶ 119–121, 131–144, are not part of the administrative record and cannot be used to impeach the agency's decision. *Camp*, 411 U.S. at 142. Review is confined to the administrative record absent "unusual circumstances justifying a departure from this general." City of Dania Beach v. FAA, 628 F.3d 581, 590 (D.C. Cir. 2010) (citation omitted) Inquiry beyond the record into the agency's motives requires a strong showing of bad faith or improper behavior." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971). Plaintiff {have/have not moved to supplement the record and} have made no such showing.

**E. Count 5: The broadcast does not violate procedural due process on its face**

Plaintiffs challenge the guidance "on its face." Compl. ¶ 194. A facial challenge succeeds only if no set of circumstances exists under which the policy would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Reno*, 507 U.S. at 300–01. Plaintiffs cannot make that showing.

The putative class spans noncitizens with materially different legal status: people in pending removal proceedings, people with final orders of removal, and applicants for admission paroled at the border. Compl. ¶¶ 19–24, 146. Thus, the process due differs across those groups. A noncitizen paroled at the threshold of entry has only the procedural rights Congress has provided. *DHS v. Thuraissigiam*, 591 U.S. 103, 138–40 (2020). A noncitizen with a final order has a diminished interest in freedom from supervision that Congress has made mandatory. 8 U.S.C. § 1231(a)(3). The guidance is plainly valid in at least some applications, which defeats a facial claim.

The claim also fails under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Congress has authorized detention of each putative class member during removal proceedings or pending removal, and the Supreme Court has upheld that detention. *Demore*, 538 U.S. at 523, 531. Release under electronic monitoring is a lesser restriction that ICE affords in place of detention.

Existing procedures permit a noncitizen to request amelioration of release conditions from an immigration judge or the district director and to appeal to the Board. 8 C.F.R. §§ 236.1(d), 1236.1(d).

The government has a strong interest in ensuring that noncitizens appear for proceedings and for removal, and in administering a program of this size with workable defaults. *Zadvydas*, 533 U.S. at 690. Individual plaintiffs who contend that the process was inadequate in their own cases may raise as-applied claims in an appropriate forum; but a facial, classwide claim is not the vehicle.

## III. <u>Any Relief Must Be Narrowly Tailored</u>

Even if the Court finds a defect, the relief Plaintiffs request is not available. No court other than the Supreme Court has jurisdiction to enjoin or restrain the operation of 8 U.S.C. §§ 1221–1232 other than as applied to an individual noncitizen. 8 U.S.C. § 1252(f)(1). That provision prohibits class wide orders requiring officials to take or refrain from actions in carrying out the covered provisions, including §§ 1226 and 1231. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). Plaintiffs' request for an order compelling individualized reassessments for the class, Compl. at 50 (Prayer for Relief ¶¶ 6–7), is an order that is prohibited. If the Court concludes that the agency's explanation is inadequate, the appropriate course is to remand for further explanation without vacatur. The deficiency would be curable, and vacatur would disrupt the supervision of tens of thousands of participants. *Allied-Signal, Inc. v. NRC*, 988 F.2d 146, 150–51 (D.C. Cir. 1993).

Any relief should extend no further than necessary to redress the injuries of the named Plaintiffs or any class the Court certifies. *See CASA*, 606 U.S. 831.

## CONCLUSION

For these reasons, the Court should grant summary judgment to Defendants on all counts.

Dated: November 20, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *<u>/s/ Danielle D. Peraza</u>*
DANIELLE D. PERAZA, D.C. Bar No, 900938597
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
202-252-1764

*Attorneys for the United States of America*